UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
UNITED STATES OF AMERICA,                              :
                                                                                    :         04 CR 203 (ARR)
                                                                                    :
       -vs.-                                                                    :         NOT FOR
                                                                                    :         ELECTRONIC OR PRINT
LINDSEY MCDONNELL, DUPREE HARRIS, and   :         PUBLICATION
WILLIAM COBB,                                                      :
                                                                                    :         OPINION AND ORDER
                                   Defendants.                       :
                                                                                    :
------------------------------------------------------------------------ X
ROSS, United States District Judge:

       The government in this criminal prosecution has moved to empanel an anonymous and partially sequestered jury.  Specifically, the government requests that (1) "the names, addresses and workplaces of members of both the venire and petit juries not be revealed"; and (2) "the jurors eat lunch together and be accompanied in and out of the courthouse by members of the United States Marshal Service each day so that they do not mingle in the courthouse with the public and any potential trial spectators."  Gov't Mem. of Law at 2.  The government argues that an anonymous and partially-sequestered jury would neither deprive defendants of meaningful jury selection nor diminish their presumption of innocence and is necessitated by several factors, including: (1) defendants face lengthy prison terms if convicted; (2) defendants Harris and Cobb, and their associates, have a history of interfering with the judicial process; (3) defendants Harris and Cobb are dangerous individuals; (4) defendants have the means to interfere with the jury; and (5) the trial is likely to attract significant media interest.  See id. at 4-12.

       Defendants oppose the motion, arguing that empaneling an anonymous jury would deprive them of their rights under the Fifth and Sixth Amendments.  Although they concede that

the law permits the court to select an anonymous jury in appropriate cases, defendants contend that this is not such a case. Specifically, they contend that (1) the government's allegations of interference with the judicial system are unsupported; (2) Dupree Harris has no gang affiliation and, therefore, does not have the means to interfere with the jury; and (3) the case is not expected to garner the extensive amount of media attention suggested by the government. See id.

For the reasons stated below the government's motion is granted.

## DISCUSSION

An anonymous jury is appropriate only where (1) there is strong reason to believe that a jury needs protection, and (2) reasonable precautions are taken to minimize any prejudicial effects on a defendant's ability to maintain the presumption of innocence and conduct meaningful voir dire. See U.S. v. Amuso, 21 F.3d 1251, 1264 (2d. Cir. 1994); U.S. v. Paccione, 949 F.2d 1183, 1192 (2d Cir. 1991); U.S. v. Vario, 943 F.2d 236, 239 (2d. Cir. 1991); U.S. v. Tutino, 883 F.2d 1125, 1132 (2d Cir. 1989). Within these parameters, the decision to empanel an anonymous jury is within the discretion of the district court. See Paccione, 949 F.2d at 1192; U.S. v. Maldano-Rivera, 922 F.2d 934, 971 (2d Cir. 1990). If the standard is met, no constitutional concerns arise. See U.S. v. Thomas, 757 F.2d 1359, 1364 (2d Cir. 1985).

Courts in this Circuit have identified a number of factors that are appropriately considered in determining whether to empanel an anonymous jury or sequester the jury in any respect. These include (1) the seriousness of the charges; (2) the dangerousness of the defendants; (3) the defendant's ability to interfere with the judicial process by himself or through his associates; (4) previous attempts by the defendant or his associates to interfere with the judicial process; and (5) the amount of media attention and public scrutiny expected during the

trial that might expose the jurors to external pressures that could impair their ability to be fair. United States v. Locascio, 357 F.Supp.2d 558, 560 (E.D.N.Y. 2005) (outlining these five factors); see, e.g., Vario, 943 F.2d at 241 (history of witness tampering); Maldano-Rivera, 922 F.2d at 971 (dangerousness of defendant); Tutino, 883 F.2d at 1132 (media pressures on jurors); United States v. Thomas, 757 F.2d 1359 (2d Cir. 1985) (history of juror tampering and association with group possessing means to harm jurors). A review of the circumstances of this case indicates that they warrant granting the government's motion for an anonymous and partially-sequestered jury.

In the instant case, the most compelling factor justifying an anonymous jury is defendant Dupree Harris's demonstrated willingness to "tamper . . . with the judicial process." Vario, 943 F.2d at 239. This factor has been described as "crucial" to the determination to empanel an anonymous jury. Id. at 239.

Harris was charged with threatening and bribing three witnesses expected to testify against his half-brother, Wesley Sykes, in Sykes' 2002 murder trial. See Benson Aff. ¶ 3. At Sykes' trial, Latisha Smith and Naia Hardison each unequivocally testified that they were approached by associates of Dupree Harris prior to Sykes' trial and told they had the choice of refusing to testify in return for money, or being killed. See Benson Aff. ¶ 6; see People v. Wesley Sykes, Trial Transcript at 405-428 (testimony of Latisha Smith), 602-612 (testimony of Naia Hardison). Harris subsequently escorted them to the office of Sykes' attorney, directed them to give a tape-recorded statement exculpating Sykes, and paid them $500. Id. Both witnesses testified that they took the money offered by Harris because they worried that if they

did not, Harris would kill them.  Id. at 420, 613.  Harris was convicted on August 6, 2004, of three counts of bribing witnesses.[1]

There is also evidence before the court that Harris intended to tamper with the judicial process in 1992.  See Bolinder Aff. ¶ 5.  The government has offered evidence in camera and ex parte that during an attempted robbery by Harris and an accomplice, the accomplice shot and killed one of the intended robbery victims.  See Bolinder Aff. ¶ 5; Ex Parte Aff. ¶¶ 4,5 .  Harris's accomplice, who had been arrested and charged with the murder, obtained the name, address, and telephone number of an eyewitness.  See Bolinder Aff. ¶ 5; Ex Parte Aff. ¶ 6.  Harris agreed to murder that witness, but he was arrested and incarcerated in 1993 for an unrelated murder before doing so.  See Bolinder Aff. ¶ 5; Ex Parte Aff. ¶ 7 .

In connection with a 1999 murder indictment against Harris, the government has made a showing that a prosecution witness poised to testify against Harris received a telephone call warning her that if she testified she would be killed.  See Benson Aff. ¶¶  7,8.  The following day, the witness identified a member of the audience as the shooter, notwithstanding her prior identification of Harris.  See Benson Affirmation ¶ 8.  Harris was subsequently acquitted.

Finally, the government has proffered evidence indicating attempts by Harris to obstruct justice in the instant action.  Based on Harris's history, the Bureau of Prisons has implemented

---

[1] In her submission, Harris's counsel introduced statements purported to have been made by witnesses at some time during Harris's witness tampering trial.  Counsel does not supply the transcript of such testimony, however, and there is no way for the court to know the context of such statements.  Moreover, the government has proffered evidence that Harris sought to intimidate or bribe witnesses directly before his witness tampering trial commenced.  See Benson Aff. ¶¶ 10-12.  Accordingly, and in light of the unequivocal statements by the witnesses during the Sykes trial indicating that Harris had bribed them, the court finds sufficient reason to believe that Harris has tampered with the judicial system.

Special Administrative Measures ("SAMs"). As a result, all of Harris's conversations with visitors and his telephone conversations are monitored, his mail is reviewed, and his contact with other prisoners is limited. Notwithstanding these extreme measures, the government has proffered evidence that Harris has been circumventing the SAM restrictions to smuggle mail to other inmates for dissemination outside the detention center. See Bolinder Aff. ¶ 8; Ex Parte Aff. ¶¶ 11, 12, and Exs. D, E.

The government has made a strong showing that defendant Harris has a demonstrated history of witness tampering and the court sees reason to believe he is poised to continue such activities. His status as a member, or perhaps leader, of the Bloods gang is further indicative of Harris's ability to interfere with the judicial process even though he is presently incarcerated. See Thomas, 757 F.2d at 1365 (evidence of defendant' past attempts to interfere with the judicial process coupled with allegations that defendants were part of a group that possessed the means to harm jurors sufficient to warrant anonymous jury). Notwithstanding Harris's denial of involvement with the Bloods, the government has made a sufficient in camera showing that Harris was at least a member of that gang.[2] See Ex Parte Aff. ¶ 12,n.7, Exs. E, F.

As the Second Circuit has noted, such "a demonstrable history or likelihood of obstruction of justice on the part of the defendant or others acting on his behalf . . . [is] sufficient in and of itself in an appropriate case to warrant an anonymous jury . . . ." Vario, 943 F.2d at 241. See also Tutino, 883 F.2d at 1133 (defendant's past efforts to tamper with a jury a contributing factor in anonymous jury determination).

---

[2]The court notes that although Harris, though counsel, alleges the existence of evidence exculpating him from gang membership, he has provided none to the court. See Def. Opp. Mot. Anon. Jury at 7.

Finally, an anonymous jury is further warranted by the media attention likely to be attracted by the case. Prior proceedings involving Dupree Harris, including the Sykes trial, have received extensive media attention. The media has also covered the instant indictment and continues to inquire about the matter. The likelihood for significant media attention, and the resulting risk of outside influence on the jury, lends further support to the propriety of an anonymous jury.

In determining whether to empanel an anonymous jury, the court must balance the noted considerations against any prejudice to the defendants' right to a fair trial. See, e.g., U.S. v. Thai, 29 F.3d 785, 801 (2d Cir. 1994); United States v. Barnes, 604 F.2d 121, 141 (1979). In particular, the court must ensure that empaneling an anonymous and partially-sequestered jury does not impair the defendants' right to the presumption of innocence or prevent meaningful jury voir dire. See, e.g., Tutino, 883 F.2d at 1133. As an initial matter, the court notes that withholding the names, addresses, and places of employment of prospective jurors will not in any way deprive defendants of meaningful voir dire.[3] On the contrary, the defendants' attorneys

---

[3] Although counsel for defendants Cobb and McDonnell considered moving for severance, they ultimately chose not to do so. This is unsurprising, as the Second Circuit case law clearly establishes that would not be entitled to severance. The Second Circuit has explained that where one co-defendant warrants an anonymous jury, the due process rights of other co-defendants are not violated by its impanelment, even where no evidence links them to any activity justifying such precautions. United States v. Aulicino, 44 F.3d 1102, 1117 (2d Cir. 1995). Because Harris's history of witness tampering compels the use of an anonymous jury, Harris's co-defendants are not entitled to severance.

In any event, with respect to William Cobb, although it is unnecessary due to the strong evidence against Harris compelling use of an anonymous jury, the court notes that the government made a separate proffer relating to Cobb's recent attempt to tamper with a witness during the pendency of proceedings in the Northern District of New York in which he eventually pled guilty to the substantive acts underlying the conspiracy charged in the instant indictment. See Bolinder Aff. ¶ 9.

will have the opportunity to contribute to the drafting of a jury questionnaire that will provide counsel with extensive information on each prospective juror's background and potential biases, enabling full assessment of a juror's suitability.  See  Thai, 29 F.3d at 801.  Moreover, the court will consult with counsel before questioning potential jurors individually to ensure that counsel possess all necessary information in determining how to exercise their challenges.  See Tutino, 883 F.2d at 1133 (approving Judge Leval's conducting extensive voir dire despite withholding from the parties and their attorneys potential jurors' names, addresses, or places of employment).

Finally, the court will, of course, provide jurors with a neutral explanation, acceptable to the parties, to ensure that the jurors draw no negative inference against the defendants due to the jurors' anonymous and partially-sequestered status.  Counsel for the defendants and the government are requested to seek to reach agreement on the language of such an explanation, and to include their recommendation on this matter as part of the introduction to their proposed jury questionnaire.

For the reasons stated above, the court grants the government's motion for an anonymous and partially-sequestered jury.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: July 1, 2005
Brooklyn, New York

SERVICE LIST:

*Attorney for Government*
Lee Freedman
Morris Fodeman
Assistant U.S. Attorneys
U.S. Attorney for the Eastern District of New York
One Pierrepont Plaza
Brooklyn, NY 11201
Fax: (718) 254-6320

*Attorney for Lindsey McDonnell*
Joel Cohen
Glory China Tower
11 East Braodway
11th Floor
New York, NY 10038
Fax: (212) 571-9065

*Attorney for Dupree Harris*
Stacey Richman
2027 Williamsbridge Road
Bronx, NY 10461
Fax: (718) 518-0674

*Attorney for William Cobb*
Philip R. Katowitz
320 Seventh Avenue, PMB # 255
Brooklyn, NY 11215
Fax: (718) 499-0148